UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION - PIKEVILLE

CIVIL ACTION NO.  7:08-139-KKC

APPALACHIAN LAND COMPANY,

                                                                                                     PLAINTIFF

v.

**MEMORANDUM OPINION AND ORDER**

EQT PRODUCTION COMPANY
f/k/a EQUITABLE PRODUCTION COMPANY,                                   DEFENDANT

\* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant EQT Production Company's Renewed Motion for Judgment on the Pleadings. [DE 54]. Plaintiff, Appalachian Land Company, responded [DE 56] and EQT replied. [DE 57]. For the following reasons, the Court will GRANT Defendant's Renewed Motion for Judgment on the Pleadings.

## BACKGROUND

Plaintiff, Appalachian Land Company, ("Appalachian") owns property in Pike County, Kentucky.  EQT Production Company, ("EQT") holds an oil and gas lease on the property. While operating the wells, EQT has paid royalties to Appalachian on the gas it has produced.  At issue is EQT's method of calculating the royalties.  EQT has calculated and paid royalties based on the value of gas after deducting certain costs and taxes.  Appalachian maintains that the method of calculation is improper and constitutes a breach of the lease.

The Lease provides that EQT shall pay royalties to ALC "at the rate of one eighth (1/8) of the market price of the gas at the well." [DE 54-6, Lease p. 3.] Gas is not sold "at the well." Instead, gas is gathered, treated, compressed, transported—and then sold away from the well, which results in increased expenses. This price away from the well is called the "market price."

1

EQT has been deducting costs and taxes from the market price to determine the "well price." ALC is then paid royalties based on this well price. ALC brought suit against EQT arguing that "no severance taxes or costs of marketing or production are permitted to be subtracted from the market price at the well before calculating royalties." [DE 1 para. 24]. At issue is whether Kentucky law follows the "at-the-well" rule or the "marketable product" rule.

The Court stayed proceedings on ALC's motion after another court in this district ruled that Kentucky follows the at-the-well rule. [DE 52]. ALC asked the Court to stay proceedings pending the appeal to the United States Court of Appeals for the Sixth Circuit of "a related case [*Poplar Creek Development Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011)] that could be largely dispositive of this case." [DE 49-2 p. 1]. According to ALC, "[b]oth *Poplar Creek* and this action present **the same dispute**." [*Id.* (emphasis added)]. ALC wisely suggested that "[p]roceeding in this action while the very issue Defendant asks this Court to decide is contemporaneously before the Sixth Circuit would be entirely duplicative and a waste of judicial resources." [*Id.* p. 1–2]. The only difference between the instant case and *Poplar Creek* is that "[t]he allegation that severance taxes . . . were improperly deducted from Plaintiff Appalachian's royalty payments was not an allegation in the *Poplar Creek* matter." [*Id.* p. 3 n. 2]. The Court granted Plaintiff's request and stayed the proceedings pending the Sixth Circuit's decision in *Poplar Creek*. [DE 52].

The Sixth Circuit held that, "Kentucky follows the 'at-the-well' rule, which allows for the deduction of post-production costs prior to paying appropriate royalties." *Poplar Creek Development Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011). The Sixth Circuit went on to "hold that 'at-the-well' refers to gas in its natural state, before the gas has been processed or transported from the well." *Id.* Because the gas was actually sold at the

2

market price and not "at-the-well," the court held that the defendant "was within its rights, under Kentucky law and the parties' agreement, to subtract gathering, compression and treatment costs before paying royalties on the market value of the gas." *Id.*

After this decision, EQT moved to remove the case from abeyance [DE 53] and renewed its Motion for Judgment on the Pleadings. [DE 54].

## STANDARD OF REVIEW

In a Rule 12(c) motion for judgment on the pleadings, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek*, 636 F.3d at 240 (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)).

## ANALYSIS

Plaintiff argues that EQT improperly deducted costs and taxes from the market price to determine the well price. EQT moves for judgment on the pleadings because *Poplar Creek* held that "Kentucky courts would allow for the deduction of these costs and taxes before paying appropriate royalties." [DE 54-1 p. 17]. EQT is correct that *Poplar Creek* held that Kentucky courts allow for the deduction of costs before paying royalties. Although deduction of severance taxes was not an issue in *Poplar Creek*, its logic extends to severance taxes. Therefore, EQT was within its rights to deduct severance taxes before paying royalties.

### I. Deduction of Costs When Calculating Royalties

In August 2009, ALC argued to this Court:

> the issue presented to this Court in Equitable's motion for judgment on the pleadings, except for the severance tax deduction, is the ***very issue*** decided in the *Poplar Creek* matter that is now before the Sixth Circuit. Factually, both cases include similarly situated parties and are premised on ***nearly identical royalty provisions*** contained in Kentucky oil and gas leases entered between plaintiffs and defendants. Legally, the core question in

3

> each case is whether Kentucky law permits defendants to deduct production costs – such as gathering, treatment and compression costs – before calculating royalties pursuant to the oil and gas leases in question.

[DE 49-2 p. 4 (emphasis added) (footnotes omitted)]

In *Poplar Creek,* the Sixth Circuit decided "the issue presented to this Court" in the instant action [DE 49-2 p. 5] and held that "Kentucky follows the 'at-the-well rule [and] allows for the deduction of post-production costs prior to appropriate royalties." *Poplar Creek*, 636 F.3d at 244.

The Court is baffled that Plaintiff's Response does not mention *Poplar Creek* until page thirteen (13) and does not substantively discuss *Poplar Creek* until page nineteen (19). [DE 56 p. 13, 19]. The Court is even more surprised that ALC argues *Poplar Creek* "is based upon an incorrect and unsupported application of Kentucky law, and **should not be followed**." [*Id.* at 19 (emphasis added)]. Plaintiff then devotes eight (8) pages arguing that *Poplar Creek* "is premised upon major errors and the result is an unsound decision that is not based upon Kentucky law." [*Id.* at 20].

As Plaintiff is well aware, this Court is bound to follow the Sixth Circuit's interpretation of Kentucky law. *Combs v. Int'l Ins. Co.*, 163 F. Supp. 2d 686, 691 (E.D. Ky. 2001). The Court may not disregard controlling law from the Sixth Circuit Court of Appeals.

Consistent with binding precedent, this Court finds that EQT was "within its rights, under Kentucky law and the parties' agreement, to subtract gathering, compression and treatment costs before paying royalties on the market value of gas." *Poplar Creek*, 636 F.3d at 244. The Court will GRANT Defendant's Motion for Judgment on the Pleadings with respect to gathering, compression, and treatment costs.

4

**II. Deduction of Kentucky Severance Taxes**

*Poplar Creek* did not directly address whether the Defendant was within its rights to deduct a portion of the cost of severance taxes from the market price in order to calculate the "at-the-well" price. But, there is no evidence or persuasive argument why the rule established in *Poplar Creek* should not apply to severance taxes. The Kentucky severance tax is simply another post-production cost that leads to a market price that is higher than the at-the-well price. Therefore, it is appropriate for EQT to deduct taxes, in addition to post-production costs, from the market price to determine the at-the-well price—and then pay ALC royalties based that price.

Other states that have adopted the at-the-well rule have included severance taxes as a deductible cost. *See Cartwright v. Cologne Production Co.*, 182 S.W.3d 438, 444–445 (Tex. App. 2006); *Schroeder v. Terra Energy*, 565 N.W.2d 887, 895–96 (Mich. App. 1997). The payment of severance taxes is an expense required to bring the gas to market, and the expense is included in the ultimate market price. Therefore, it is reasonable to deduct severance taxes from the market price in order to "work back" to calculate the at-the-well price.

ALC again asks this Court to ignore *Poplar Creek* and adopt the "marketable-product" rule. ALC notes that the "Lease requires the gas royalty to be paid upon the prorata part of 'market price at the well.'" [DE 56 p. 29]. *Poplar Creek* held that Kentucky's market price at-the-well rule "allows for the deduction of post-production costs prior to paying appropriate royalties." *Poplar Creek*, 636 F.3d at 244. ALC ignores *Poplar Creek* and claims that "[d]ecided case law mandates that 'market price,' and words of similar import, include all production and severance taxes." [DE 56 p. 29]. ALC asks this Court to ignore binding precedent, and offers no argument why Kentucky's severance tax is not a "post production cost[]" that may be deducted "prior to paying appropriate royalties." *Poplar Creek*, 636 F.3d at 244.

5

Instead of discussing the binding case law of this Circuit, ALC cites a number of irrelevant cases. First, ALC cites cases from West Virginia, a state that unlike Kentucky, does not follow the at-the-well rule. *See Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 633 S.E.2d 22 (W. Va. 2006). It is careless at best, and possibly unethical to cite cases from a jurisdiction whose law is contradictory to the precedent binding on the Court. ALC also cites a number of cases in which the royalty contracts at issue are clearly distinguishable from the current contract. *See, e.g.*, *Johns Hopkins Hosp. v. Peabody Coal. Co.*, 920 F. Supp. 738, 740 (W.D. Ky. 1996) (stating that royalty was to be paid based on "the average price . . . at which the coal is sold . . . **without the deduction** of sales commissions or expenses or discounts) (emphasis added). ALC has made no argument that Kentucky's severance tax is not a "cost" that may be deducted from the market price before paying royalties on the market price at-the-well. Therefore, the Court will GRANT Defendant's Motion for Judgment on the Pleadings with respect to Kentucky's Severance Tax.

## **CONCLUSION**

When this case was filed, the Plaintiff presented the Court with a novel legal question— does Kentucky follow the "marketable product" or "at-the-well" rule? Another court in our district ruled that Kentucky follows the "at-the-well" rule. Plaintiff disagreed with that court's decision and appealed to the Sixth Circuit Court of Appeals. Plaintiff then asked this Court to stay the case pending resolution of their appeal, hoping the Sixth Circuit would reverse and adopt the opposite rule. But, the Sixth Circuit affirmed and held that Kentucky follows the at-the-well rule.

This case no longer involves a novel legal question because the Sixth Circuit provided the answer. Instead of accepting this result, the Plaintiff decided to re-argue their case to this Court,

hoping to persuade the Court that the Sixth Circuit was wrong. This Court lacks the power to make those judgments. Therefore, Plaintiff's claims will be dismissed with prejudice.

For the foregoing reasons, EQT Production Company's Motion for Judgment on the Pleadings is GRANTED and Appalachian Land Company's Complaint is DISMISSED with prejudice and STRICKEN from the record.

Dated this 16th day of February, 2012.

Signed By:
*Karen K. Caldwell*
United States District Judge